**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Criminal Case No. 19-cr-00174-REB-1

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1. AMY EDINGTON,
     a/k/a Amy Quini,

---

**ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE**
**PURSUANT TO 18 U.S.C § 3582(c)(1)(A)(i) (COMPASSIONATE RELEASE)**

**Blackburn, J.**

     The matter before me is the **Motion To Reduce  Sentence Pursuant to 18**

**U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release)** [#98],[1] filed April 28, 2020, on

behalf of defendant Amy Edington.[2]  The government has filed a response ([#101], filed

May 13, 2020), and Ms. Edington filed a reply under restriction ([#105], filed May 20,

2020).  I have jurisdiction to consider Ms.Edington's request for sentence modification

under 18 U.S.C. § 3582(c).  Having considered carefully the motion, the record, and the

apposite law, I deny the motion.

---

     [1]  "[#98]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

     [2]  Both before and after counsel filed the instant motion on her behalf, Ms. Edington also submitted two letters ([#97, filed April 24, 2020 & #102, filed May 18, 2020) *pro se*, in which she also requested compassionate release.  Because Ms. Edington is represented by counsel in this matter, I strike these motions.  *See United States v. Sandoval-De Lao*, 283 Fed. Appx. 621, 625 (10th Cir. June 30, 2008) ("[B]ecause there is no constitutional right to a hybrid form of representation, when defendants have the assistance of counsel, courts need not consider any filings made pro se.") (internal citations and quotation marks omitted); *United States v. Askew*, 2012 WL 13191397 at *1 (D. Colo. June 4, 2012) (striking *pro se* letter filed by represented defendant under authority of *United States v. Bennett*, 539 F.2d 45, 49 (10th Cir.), *cert. denied, 97 S.Ct. 327 (*1976)).

Pursuant to her plea agreement [#56] with the government, Ms. Edington pled guilty to one count of an eleven-count indictment for conspiracy to use, produce, or traffic in counterfeit access devices, and aiding and abetting same.  She was sentenced to a term of imprisonment of twelve months plus one day.

At the time of her federal sentencing, Ms. Edington was in state custody for violations of probation in two cases pending in the district court of Pueblo County, Colorao.  She was returned to state custody and was sentenced in both state cases to one-year terms of imprisonment to run concurrently with the federal sentence. Thereafter, however, Ms. Edington was not released to the federal detainer, and the United States Marshal still considered her to be in state custody.  On her motion, she was released from state custody on April 17, 2020.  Nevertheless, at least as of the date of the government's response to the instant motion (May 12, 2020), the state has not released Ms. Edington. She therefore has not been designated to a federal Bureau of Prisons facility and currently remains in custody in the Pueblo County Jail.

Ms. Edington seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). One of the purposes of the First Step Act was  to "increas[e] the use and transparency of compassionate release," *see* First Step Act, 132 Stat. at 5239, by expanding the universe of persons who could seek such relief.  Whereas previously, only the Director of the Bureau of Prisons could file a motion compassionate release, ***United States v. Gutierrez***, – F.Supp.3d –, 2019 WL 1472320 at *1 (D.N.M. Apr. 3, 2019), now a defendant herself may seek such relief from the court, but only "after [she] has fully

exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [her] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," 18 U.S.C. § 3582(c)(1)(A).

Given the unique circumstances of this case, where Ms. Edington is not presently in federal custody, the government agrees that the exhaustion requirement may be waived as futile. *See McCarthy v. Madigan*, 503 U.S. 140, 147, 112 S.Ct. 1081, 1088, 117 L.Ed.2d 291 (1992) (administrative remedy may be inadequate "because of some doubt as to whether the agency was empowered to grant effective relief") (citation and internal quotation marks omitted); *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010) ("A narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion is futile."). *See also United States v. Norris*, – F.Supp.3d –, 2020 WL 2110640 at*2 (E.D.N.C. April 30, 2020) (inmate not yet transferred to federal custody satisfied exhaustion requirement).  I assume without deciding that Ms. Edington has satisfied the exhaustion requirement.  Thus, the only question  is whether Ms. Edington meets the other requirements warranting an exercise of the court's discretion to grant compassionate release.[3]

---

[3]  I note that Ms. Edington has not requested a hearing, nor would she be entitled to one if she had.  Modification of a sentence under section 3582 is not a plenary resentencing. *Dillon v. United States*, 560 U.S. 817, 826, 130 S.Ct. 2683, 2691, 177 L.Ed.2d 271 (2010).  District courts have found the First Step Act does not permit plenary resentencing. *United States v. Lewis*, 398 F.Supp.3d 945, 972 (D.N.M. 2019); *United States v. McKinney*, 382 F.Supp.3d 1163, 1165 (D. Kan. 2019); *United States v. Lawson*, 2019 WL 1959490 at *3 (N.D. Ohio May 2, 2019); *United States v. Glore*, 2019 WL 1761581 at *5 (E.D. Wis. April 22, 2019); *United States v. Russo*, 2019 WL 1277507 at *1 (D. Neb. March 20, 2019); *Potts*, 2019 WL 1059837 at *2.  Although the Tenth Circuit has not addressed this precise issue, it has confirmed that resentencing under 18 U.S.C. § 3582(c) is not plenary. *See United States v. Quary*, 881 F.3d 820, 822-23 (10th Cir. 2018).  Concomitantly, because a defendant need not be present for a proceeding that involves the correction or reduction of a sentence under 18 U.S.C. § 3582(c), *see* FED. R. CRIM. P. 43(b)(4), a hearing is not necessary to resolve a motion for relief under the First Step Act, *see United States v. Smith*, 397 F.Supp.3d 1014, 1019 (W.D. Mich. 2019); *Wright v. United States*, 393 F.Supp.2d 432, 441 (E.D. Va. 2019); *Lewis*, 2019 WL 2192508 at *19 n.12; *Russo*, 2019 WL 1277507 at

The First Step Act did not change the substantive standards governing compassionate release.  A proposed sentence reduction still must be "supported by: (1) extraordinary and compelling reasons; (2) applicable policy statements issued by the Sentencing Commission[;] and (3) the factors set forth in [18 U.S.C. §] 3553(a)." *United States v. Willis*, 382 F.Supp.3d 1185, 1187 (D.N.M. 2019) (quoting 18 U.S.C. § 3582(c)(1)(A)(i))(internal quotation marks omitted).

Regarding the first condition, Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction."  28 U.S.C. § 994(t).  In response, the Commission issued USSG §1.B1.13.  Under this policy statement, the court may reduce a term of imprisonment "if, after considering the factors set forth in 18 U.S.C. § 3553(a)," it determines that "[e]xtraordinary and compelling reasons warrant the reduction" and that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." **USSG** §§1B1.13(1)(A) & (2).[4]

The policy statement sets forth specific examples of circumstances which may be considered extraordinary and compelling, including the defendant's terminal illness or

---

*1; ***Davis***, 2019 WL 1054554 at *2.

[4]  Although the policy statement contemplates that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons," **USSG** §1B1.13, cmt. n.4, the Tenth Circuit has recently applied this guidance in a case in which the defendant filed his motion *pro se*, **see *United States v. Saldana***, – Fed. Appx. –, 2020 WL 1486892 at *2 (10th Cir. March 6, 2020), and "a majority of federal district courts have found that the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it," **United States v. Perez**, 2020 WL 1180719 at *2 (D. Kan. March 11, 2020).  **See also United States v. Redd**, – F.Supp.3d –, 2020 WL 1248493 at *7 (E.D. Va. March 16, 2020) (by "authoriz[ing] courts to act independently of the BOP Director, upon a defendant's motion, once administrative remedies are exhausted . . . the First Step Act effectively amended U.S.S.G. § 1B1.13 by eliminating the requirement that a sentence reduction under § 3582(c)(1)(A) be 'upon motion of the Director of Bureau of Prisons,' as U.S.S.G. § 1B1.13 requires.").

debilitating medical condition, advanced age, or compelling family circumstances such as the death or incapacitation of the sole caregiver for the defendant's minor children. None of these categories apply to Ms. Edington. Instead, she relies on the catch-all provision of the policy statement, by which compassionate release may be warranted for "an extraordinary and compelling reason other than, or in combination with, the reasons described in" the other subdivisions. **USSG** §1B1.13, cmt. n.1(D).[5]

The existence of the COVID-19 pandemic no doubt can be described as "extraordinary" insofar as it is "[b]eyond what is usual, customary, regular, or common." ***United States v. Rodriguez***, – F.Supp.3d –, 2020 WL 1627331 at \*7 (E.D. Pa. April 1, 2020) (quoting Black's Law Dictionary, *Extraordinary* (11th ed. 2019)) (internal quotation marks omitted). However, because the apposite test is stated in the conjunctive, the dangers presented by the pandemic – which impact us all, worldwide – also must be "compelling" in Ms. Edington's particular circumstances. ***See United States v. Raia***, 954 F.3d 594, 597 (3rd Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." ).[6] A need is "compelling" when it is "so great that irreparable

---

[5] The Bureau of Prisons has promulgated a list of nonexclusive factors it uses to determine whether "other" extraordinary and compelling reasons exist. These include: the defendant's criminal and personal history; the nature of the offense; any disciplinary infractions; the length of sentence and the amount of time served; the defendant's current age and age at the time of offense and sentencing; the defendant's release plans; and"[w]hether release would minimize the severity of the offense." **BOP Program Statement** 5050.50 at 12 (2019) (available at: https://www.bop.gov/policy/progstat/ 5050_050_EN.pdf ) (last accesses May 21, 2020). ***See also Saldana***, 2020 WL 1486892 at \*2.

[6] ***See also United States v. Bolze***, – F.Supp.3d –, 2020 WL 2521273 at \*7 (E.D. Tenn. May 13, 2020) ("[T]he COVID-19 pandemic cannot present an extraordinary and compelling reason alone because the policy statement directs courts to consider individual reasons for compassionate release, not general threats to the prison population."); ***United States v. Binraymond***, 2020 WL 2110577 at \*2 (S.D. Ohio May 4, 2020) (defendant "failed to show that COVID-19 pose[d] a particular risk to him"); ***United States v. Numann***, 2020 WL 1977117 at \*3 (D. Alaska April 24, 2020) ("[T]he risks of COVID-19 have pervaded all

harm or injustice would result if it is not met." *Rodriguez*, 2020 WL 1627331 at *7

(quoting Black's Law Dictionary, *Compelling Need* (11th ed. 2019)) (internal quotation

marks omitted).

Ms. Edington claims she suffers from asthma and high blood pressure and that

these conditions present compelling reasons for her release.  People with moderate to

severe asthma and those with pulmonary hypertension are at higher risk of developing

severe illness from COVID-19.  (*See* Centers for Disease Control and Prevention,

*Groups at Higher Risk for Severe Illness* (available at: https://www.cdc.gov/coronavirus/

2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions)

(last accessed May 26, 2020).  After the government pointed out her failure to

substantiate these claims, Ms. Edington belatedly produced evidence that she has been

prescribed medication for high blood pressure.  (*See* **Def. Reply App.**, Exh. A.)   Her

claim that she suffers from asthma is wholly unsubstantiated, however, and indeed, the

drug Ms. Edington has been prescribed for hypertension, propranolol, is contraindicated

for people with asthma.  *See* Drugs.com, *Propanolol*, *Before Taking This Medicine*

(available at:  https://www.drugs.com/propranolol.html) (last accessed May 26, 2020).[7]

It is Ms. Edington's burden to prove that her medical conditions create

extraordinary and compelling reasons warranting a sentence reduction.  *United States*

*v. Ng Lap Seng*, 2020 WL 2301202 at *3 (S.D.N.Y. May 8, 2020).  *See also United*

---

corners of society and the possibility of contraction does not independently justify compassionate
release.").

[7]  I note also that Ms. Edington previously lied to the prosecutor and others associated with this
case about her medical condition in hopes of securing a more favorable sentencing recommendation.
(*See* **Presentence Report** ¶ 19 at 6 [#88], filed January 13, 2020.)

*States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) ("It is the defendant's burden to

establish that [s]he warrants a § 3582(c)(2) reduction."); ***United States v. Butler***, 970

F.2d 1017, 1026 (2nd Cir.) ("A party with an affirmative goal and presumptive access to

proof on a given issue normally has the burden of proof as to that issue."), ***cert. denied***,

113 S.Ct. 480 (1992).   While Ms. Edington may suffer from high blood pressure, there

is nothing in the record to suggest this condition is not controlled on medication.[8]

Moreover, at 38 years old, Ms. Edington is not in a high risk age category, and she has

no other proven risk factors or comorbidities that might further increase her risk of

developing serious illness from COVID-19.[9]

Nevertheless, and granting that Ms. Edington is at slightly higher risk of serious

illness from COVID-19 due to her underlying medical conditions, I still would find a

sentence reduction to be unwarranted in this case.  For even if all other preconditions to

consideration of a sentence reduction were satisfied, Ms. Edington still would be

required to establish both that she does not present "a danger to the safety of any other

person or to the community, as provided in 18 U.S.C. § 3142(g)," and that the factors

---

[8]  Moreover, despite some initial concern, it now appears that blood pressure medications do not increase the risk of developing severe illness with COVID-19.  ***See*** Medical News Today, *No Link Between Hypertension Drugs and COVID-19 Risk, Study Rules* (May 5, 2020) (available at : https://www.medicalnewstoday.com/articles/no-link-between-hypertension-drugs-and-covid-19-risk-study-r ules#The-findings-should-reassure-doctors) (last accessed May 26, 2020); Brenda Goodman, MA, WebMD, *Blood Pressure Medicines Don't Increase COVID-19 Risk* (May 1, 2020) (available at: https://www.webmd.com/lung /news/ 20200501/blood-pressure-medicines-don't-increase-covid-risk) (last accessed May 26, 2020).

[9]  In addition, while prison conditions do make it difficult to physically distance, Ms. Edington admits there are currently no known cases of COVID-19 at the Pueblo County Jail where she  is housed. There is of course no way of knowing what her potential exposure might be once she is transferred to federal custody, as a facility has not been designated yet.  However, as of May 26, 2020, there were 264 confirmed cases of the disease in Pueblo County itself, where Ms. Edington seeks to be released.  (***See*** Colorado Department of Public Health, *Case Data* (available at :  https://covid19.colorado. gov/data/case-data) (last accessed May 26, 2020).

7

set forth in 18 U.S.C. § 3553(a) warrant a sentence reduction.  **USSG** §§1B1.13(1)(A) & (2).

With respect to determining whether Ms. Edington presents a danger to the community,[10] while it is true that her offenses are not crimes of violence and do not involve narcotics,[11] the concept of what constitutes a danger to the community "may, at least in some cases, encompass pecuniary or economic harm." *United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir.1992).  *See also United States v. Provenzano*, 605 F.2d 85, 95 (3rd Cir. 1979) ("[C]ourts are not confined in such cases to considering only harms involving an aura of violence. . . . [A] defendant's propensity to commit crime generally, even if the resulting harm would be not solely physical, may constitute a

---

[10]   In making the determine, the court must consider:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including —

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18  U.S.C. § 3142(g).

[11]   Ms. Edington does have a recent history of methamphetamine use, however. (*See Presentence Report* ¶¶ 80 at 19 & 90, 93 at 20.)

sufficient risk of danger[.]"); ***United States v. Madoff***, 586 F.Supp.2d 240, 252

(S.D.N.Y. 2009) (citing cases); S. REP. NO. 225, 98th Cong., 1st Sess. 12 (1983),

*reprinted in* 1984 U.S.C.C.A.N. 3182, 3195 ("[T]he language referring to the safety of

the community refers to the danger that the defendant might engage in criminal activity

to the detriment of the community. The committee intends that the concern about safety

be given a broader construction than merely danger of harm involving physical

violence.").

Ms. Edington's crimes involve attempting to pass checks which she stole from

the mail and then altered.[12]  In many instances, the checks she stole were intended to

pay the victims' monthly bills.  (***See* Presentence Report** ¶ 20 at 6 [#88], filed January

13, 2020.)  The deleterious effects of COVID-19 have not been limited to its devastating

impact on individual's physical health and well-being; as of May 21, 2020, 38.6 million

people have filed for unemployment benefits since mid-March,[13] and 47% of all

households in the country report their income has declined with the onset of the

pandemic.  ***See*** Scott Horsley, National Public Radio, *38.6 Million Have Filed For*

*Unemployment Since March* (May 21, 2020) (available at:  https://www.npr.org/sections

/coronavirus-live-updates2020/05/21/859836248/ 38-6-million-have-filed-for-

unemployment-since-march) (last accessed May 26, 2020).  For families already

---

[12]  In addition, Ms. Edington's suggestion that the charges in this case represent her first felony offense is untrue; she was charged with and pled guilty to felony theft in 2018 and felony criminal impersonation in 2019.  (**Presentence Report** ¶¶ 48-49 at 12-14.)

[13]  That number includes some 476,000 Coloradans.  ***See*** Jesse Paul, THE COLORADO SUN, *25,000 More Coloradans Filed for Unemployment Last Week* (May 21, 2020) (available at: https://coloradosun.com/2020/05/21/colorado-unemployment-claims-coronavirus-filed/) (last accessed May 26, 2020).

suffering financial hardship, the harm caused by a missed mortgage or rent payment or an unpaid utility bill is magnified.  Thus, the danger presented to the community by the type of crimes for which Ms. Edington was sentenced is, if anything, more substantial.

Yet even if I were to concede (which I do not) that Ms. Edington does not present a danger to the community, I cannot find that the applicable § 3553(a) factors warrant an exercise of my discretion to reduce her sentence.  ***Dillon v. United States***, 560 U.S. 817, 827, 130 S.Ct. 2683, 2692, 177 L.Ed.2d 271 (2010).  These factors include, but are not limited to (1) the nature and circumstances of the offense and the history and characteristics of Ms. Edington; (2) the need for the sentence imposed to (a) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense (b) afford adequate deterrence to criminal conduct; and (c) protect the public from further crimes of Ms. Edington; (3) the sentencing ranges under the guidelines; (4) the pertinent policy statements of the Sentencing Commission; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  18 U.S.C. §§ 3553(a)(1), (2), (4), (5), and (6).

The fact that Ms. Edington has not had a disciplinary infraction since being incarcerated five months ago, while admirable, is simply insufficient by itself to merit her early release.  Such an outcome would not adequately reflect the seriousness of Ms. Edington's offense, promote respect for the law, or provide just punishment, nor would it afford adequate deterrence to criminal conduct of this nature.  Moreover, Ms. Edington's history of failing to comply with the terms her probation, failing to appear as ordered by the court, and lying to prosecutors to obtain more favorable outcomes for herself does

not inspire confidence that a sentence of less than half the court originally imposed is sufficient to further the goals of sentencing in her case.

For these reasons, Ms. Edington's motion for compassionate release must be denied.

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Motion To Reduce  Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release)** [#98], filed April 28, 2020, on behalf of defendant, Amy Edington, is denied; and

2.  That the **Letters** [#97], filed April 24, 2020, and [#102], filed May 18, 2020, by Ms. Edington *pro se* are stricken.

Dated May 27, 2020, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge